**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MARY KATHRYN BROWN,                )
                                   )
                    Plaintiff,     )
                                   )
          vs.                      )          Civil Action No. 06-393
                                   )          Judge Nora Barry Fischer
CITY OF PITTSBURGH, et al.,        )
                                   )
                    Defendants.    )

## MEMORANDUM OPINION

### I.     Introduction

In this memorandum opinion, the Court considers the Motion for Attorney's Fees and Non-Taxable Costs and Supplement thereto filed by Plaintiff, Mary Kathryn Brown[1] ("Brown") against Defendant City of Pittsburgh, Pittsburgh City Council, and Mayor Luke Ravenstahl ("the City" or "Defendants"). (Docket Nos. 90, 97). After considering the motion, the briefs, and the exhibits submitted by the parties, as well as the parties' arguments presented at a hearing held on April 15, 2010, the Court will grant Plaintiff's motion and supplement, and will award Plaintiff's attorney fees and costs aggregating $ 208,601.69.

### II.    Background

This case revolved around Ordinance No. 49, which supplements the Pittsburgh Code of Ordinances, Title 6, enacted by the City of Pittsburgh in December 2005 establishing two types of zones around hospitals, medical offices and clinics - a fifteen foot buffer zone and a hundred foot

---

[1] Brown is represented by a local attorney, Lawrence Paladin, Esquire, as well as David Cortman, Esquire from the Alliance Defense Fund, a non-profit organization providing free legal assistance. *See* http://www.alliancedefensefund.org/main/default.aspx (last visited May 19, 2010).

bubble zone. *See* Pittsburgh, Pa., Code Tit. 6, §§ 623.01-623.07. On October 27, 2006, Brown

brought suit against the City under 42 U.S.C. § 1983 contending that the Ordinance violated her civil

rights under the United States and Pennsylvania Constitutions, as well as the Pennsylvania Religious

Freedom Protection Act, 71 Pa. Stat. Ann. §§ 2401-2407. After she filed her Verified Complaint

(Docket No. 1), the City moved for partial dismissal of her claims. (Docket No. 17). Thereafter,

Brown filed a motion for a preliminary injunction seeking to prevent the City from enforcing the

Ordinance against her. (Docket No. 22). On February 22, 2008, this Court denied the motion, finding

the Ordinance facially valid and that Brown had failed to show that the City had applied or would

apply it an unlawful manner against her. (Docket Nos. 67, 68). The Court also dismissed several

counts of Brown's Complaint and ordered her to file an amended complaint. (Docket Nos. 69, 70).

Brown appealed both Orders, but filed her Amended Complaint. (Docket Nos. 71, 72).

On October 30, 2009, the United States Court of Appeals for the Third Circuit reversed this

Court's denial of preliminary injunctive relief, finding that, although the provisions individually were

facially constitutional, the combination of the two zones was unconstitutional. *Brown v. City of*

*Pittsburgh*, 586 F.3d 263 (3d. Cir. 2009). After facially striking down the combination of the two

zones, the Court of Appeals concluded that neither provision alone infringed upon rights guaranteed

by the Equal Protection Clause, the Free Exercise Clause, or Pennsylvania's Religious Freedom

Protection Act. *Id.* In light of the Ordinance's severability provision, Pittsburgh, Pa., Code Tit. 6, §

623.06, the Court of Appeals remanded the matter, directing that on remand the City should inform

the Court of its preferred zone, and the Court shall enjoin enforcement of the other. *Brown*, 586 F.3d

263. The Court of Appeals further vacated this Court's rejection of Brown's as-applied challenge

to the particular clinic locations where Brown protested, but affirmed the Court's ruling on Brown's

as-applied challenge based on selective enforcement of the statute by City police officers. *Id.* The appellate court declined to consider Brown's appeals from this Court's orders partially dismissing her Complaint. *Id.*

On December 17, 2009, after being advised of the City's preference as to which zone should remain, the Court permanently enjoined *in toto* section 623.03 of the Ordinance, i.e. the one hundred foot bubble zone.[2] (Docket No. 85). This case was then referred to Magistrate Judge Robert C. Mitchell for purposes of holding a mediation conference in an effort to resolve the parties' dispute regarding attorney's fees and costs. (Docket No. 81). A mediation conference was held January 6, 2010; however, the issue of attorney's fees was not resolved. (Docket No. 88). Thus, Brown filed her Motion for Attorney Fees and Non-Taxable Costs, with supporting documentation including billing statements and declarations on February 8, 2010. (Docket Nos. 90, 90-1 through 90-22). The City filed its Response on March 8, 2010, with supporting exhibits and the declaration and audit report of James Schratz, Esquire.[3] (Docket Nos. 93, 93-1 - 93-11). Brown filed a Reply on March 19, 2010, with a supplemental fee statement and other supporting documentation. (Docket Nos. 97,

---

[2]

In that Order, it was also directed that the City shall construe and enforce the fifteen foot buffer zone "in a manner that does not permit any person to picket or demonstrate within the boundaries" of that zone. (Docket No. 85). The City was further ordered to provide training to its police officers concerning proper enforcement of the Ordinance, to provide Brown with a copy of such training materials, to clearly mark the boundaries of the buffer zone in front of any hospital, medical office or clinic prior to enforcement, and to remove any and all current markings that delineate the stricken bubble zone. (*Id.*). Upon the parties' agreement, this Order resolved all outstanding matters, including Brown's remaining as-applied challenge, except for the dispute regarding attorney's fees and costs. (*Id.*).

[3]

Mr. Schratz is a licensed attorney in the state of California with approximately 18 years experience in insurance litigation. (Docket No. 93-5). He has performed over 900 legal fee audits in various cases throughout the country and has served as an expert witness. (*Id.*). However, there is no evidence Mr. Schratz has experience with civil rights litigation or trials. (*See Id.*); *See also Branham v. Snow*, 2006 WL 1750443, at *3 (S.D. Ind. June 19, 2006); *Lopez v. San Francisco Unified Sch. Dist.*, 385 F.Supp.2d 981, 993 (N.D. Cal. 2005). In addition, the Court notes that other courts have rejected Mr. Schratz's opinions because he lacked personal knowledge about the cases he audited or the local legal communities of those cases. *See Miller v. Vicorp Rest.*, 2006 WL 212021, at *2 n.3 (N.D. Cal. 2006); *Branham*, 2006 WL 1750443, at *3; and *Lopez*, 385 F.Supp.2d at 993.

97-1 - 97-17). The Court granted the City leave to file a sur-reply, but it declined to do so. (Docket No. 96). A hearing was held on Brown's motion on April 15, 2010, during which the City offered as an exhibit without objection the transcript from the preliminary injunction evidentiary hearing held on March 23, 2007. (Docket No. 98; *Transcript of Oral Argument* held 4/15/10, hereinafter "Trans.," at pgs. 3-6; *see also* Docket No. 53).

In support of her motion, Brown submitted an 84-page itemized billing statement, which details the tasks completed and hours charged by her counsel beginning on December 1, 2005 and ending on February 8, 2010, as well as her counsel's litigation expenses.[4] (Docket No. 90-1). With her Reply, she supplemented her fee request with a 15-page itemized billing statement detailing the hours charged by her counsel since the filing of her original motion on February 8, 2010 until March 19, 2010.[5] (Docket No. 97-1). These two billing statements chronologically set forth the time spent daily by each individual counsel and staff member, the fee for that time based on each individual's hourly rate, as well as the nature of the work performed. (*Id.*). A summary of each individual staff's time spent and related fee as presented to the Court are as follows:

| Individual | Time Requested (Amt. Reduced by Counsel) | Total Fee Requested |
| --- | --- | --- |
| K. Theriot | 0.00    (.10) | 0.00 |
| D. Cortman | 336.40 (38.90) | 117,740.00 |
| J. Shafer | 0.00    (7.90) | 0.00 |
| J. Tedesco | 0.00    (21.00) | 0.00 |
| E. Murray | 327.30 (111.90) | 73,642.50 |

---

[4]

This billing statement does not include time charged between May 14, 2008 and November 2, 2009, during which this case was on appeal. A separate fee petition filed by Brown for this time period is currently pending before the Court of Appeals.

[5]

These requested "fees on fees," uncontested by the City, are compensable so long as the hours spent are not excessive. *See Hernandez v. Kalinowski*, 146 F.3d 196, 199-200 (3d Cir. 1998).

| | | | |
|---|---|---|---|
| J. Bolinger | 83.40 | (16.00) | 18,765.00 |
| T. Chandler | 0.00 | (.20) | 0.00 |
| T. Barham | 75.40 | (42.90) | 16,965.00 |
| D. Hacker | 0.00 | (3.20) | 0.00 |
| M. Sifert | 3.10 | (2.50) | 232.50 |
| E. Brown | 27.30 | (8.40) | 2,047.50 |
| S. Hamilton | 64.20 | (5.00) | 4,815.00 |
| D. Farney | 0.00 | (.10) | 0.00 |
| R. Tebault | 0.00 | (.10) | 0.00 |
| J. Young | 2.00 | (2.20) | 150.00 |
| T. Boggs | 8.10 | (5.20) | 607.50 |
| L. Morgan | 0.00 | (.40) | 0.00 |
| L. Paladin | 52.65 | (12.75) | 13,162.50 |
| J. Fox-Cid | 3.10 | (2.50) | 325.50 |
| D. Grubbs | 1.00 | (.50) | 105.00 |
| M. Sharp | 0.00 | (1.20) | 0.00 |
| **Totals:** | **983.95** | **(282.95)** | **248,558.00** |

(Docket Nos. 97 at 19, 97-1, 97-2, 97-17). Brown therefore requests $ 248,558.00 in fees and $8,991.24 in costs,[6] aggregating $ 257,549.24. (*Id.*). Brown supports her request for costs in a 5-page list of expenses, filed with her Reply. (Docket No. 97-17). The total sum of fees sought, as pointed out by Brown, was reduced by "billing judgment" exercised by her attorneys of 21.07 %,[7] or $ 66,348.50, prior to submission to the City. (Docket No. 97 at 19).

## III.    Standard of Review

---

[6]

In its Response, the City initially challenged Brown's request for non-taxable costs in the amount of $8,991.24, on the basis that her costs were not adequately documented. (Docket No. 93-2 at 31). As noted, Brown submitted a detailed list of expenses with her Reply and offered to provide actual receipts upon request. (Docket No. 97-17). At the motion hearing, the City did not raise any further objection to Brown's costs. (Trans. at 51). Given same, the Court understands the City to acquiesce in the costs sought by Brown. The Court discusses reimbursement for costs in Section IV(G), *infra*. As will be seen, all of Brown's costs are recoverable.

[7]

This is an average which the Court computed taking into account the billing judgment reduction for attorney's fees sought in Brown's initial motion, i.e. 21.15 %, and for her fees sought in her supplemental motion, i.e. 19.60 % (Docket Nos. 90-1, 97, 97-1, 97-2).

The general rule in the United States is that each party must pay its own attorney's fees and expenses, but Congress enacted 42 U.S.C. § 1988 "in order to ensure that federal rights are adequately enforced." *Perdue v. Kenny A.*, -- U.S.--, 130 S.Ct. 1662 (Apr. 21, 2010). Under section 1988, district courts are authorized to award prevailing parties reasonable attorney's fees in civil rights litigation, "unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)(quoting H. Rep. No. 94-1558, p. 1 (1976), S. Rep. No. 94-1011, p. 4 (1976)); *McKenna v. City of Phila.*, 583 F.3d 447 (3d Cir. 2009). A prevailing party is not automatically entitled to compensation for attorney's fees in their entirety; rather the party seeking such attorney's fees bears the burden to prove the reasonableness of its request.[8] *Interfaith Community Organization v. Honeywell*, 426 F.3d 694, 711 (3d Cir. 2005); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Therefore, the amount of the attorney's fees must turn on the facts in each case, and the district court should determine what fee is reasonable, i.e. "a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*, 130 S.Ct. 1662; *Hensley*, 461 U.S. at 433.

The Supreme Court in *Blum v. Stenson*, 465 U.S. 886 (1984), recognized that the initial estimate for attorney's fees is obtained by multiplying a reasonable hourly rate[9] by a reasonable

---

[8]

As discussed below, the City concedes that Brown is the prevailing party for purposes of section 1988, although partially and challenges the level of success she has obtained. (Docket No. 93 at 2, 5-6, 8, 15).

[9]

The City has not raised any objection or argument in opposition to the rates requested by Brown's attorneys and their staff. Therefore, the Court "may not exercise its discretion to adjust the rate downward." *Ridley v. Costco Wholesale Corp.*, 217 F. App'x 130, 139 (3d Cir. 2007). Accordingly, a discussion of the reasonableness of said rates is not included herein, and the Court accepts the hourly rates proposed by Brown. (*See* Docket No. 90-21 at 13-14). The Court finds, however, that based on her familiarity with the market rate for civil rights litigation in the Western District of Pennsylvania and her thirty years of experience in private practice, including civil rights , as well as the declarations submitted by Brown's attorneys, that the rates sought are comparable to the rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Rode*, 892 F.2d at 1183.

number of hours expended in the litigation. *See Hensley*, 461 U.S. at 433. This formula, often referred to as the "lodestar," serves as an objective basis to make an initial assessment of the "value of the lawyer's services." *Id*; *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) (explaining the lodestar approach). The United States Court of Appeals for the Third Circuit has adopted the community market rate rule to determine the lodestar. *Student Pub. Interest Research Group v. AT&T Bell Lab.* ("*SPIRG*"), 842 F.2d 1436, 1448 (3d Cir. 1988). This rule requires the court to "assess the experience and skill of the attorneys and compare their rates to those of comparable lawyers in the private business sphere." *Id.* at 1447.

Attorneys seeking compensation for their fees must also document their hours with "sufficient specificity" "to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Washington*, 89 F.3d at 1037 (quoting *Rode*, 892 F.2d at 1190). Where this documentation is inadequate, a prevailing party's hours may be reduced. *Hensley*, 461 U.S. at 433. The fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations" to determine adequate documentation. *Washington*, 89 F.3d at 1037-38. Nevertheless, the prevailing party need not go so far as to "know the exact number of minutes spent nor the precise activity to which each hour was devoted or the specific attainments of each attorney." *Id.* If the opposing party makes specific objections to the attorney's fees, a court must "go line by line through the billing records." *Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001). The court must then "exclude those [hours] that are excessive, redundant or otherwise unnecessary." *Interfaith*, 426 F.3d at 711.

The Supreme Court in *Hensley* instructs a district court to assess the reasonableness of a fee request by referring to twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n. 3.[10]  Such factors aim to award fees "which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." *Id.* at 433 n. 4.  In conducting this analysis, a district court is afforded substantial discretion. *Id.* at 430 (emphasis added); *Lanni v. N.J.*, 259 F.3d 146, 148 (3d Cir. 2001)(citing *Silberman v. Bogle*, 683 F.2d 62, 64-65 (3d Cir. 1982)).

## IV.    Discussion

The City objects to Brown's fee request on the following specific grounds: (a) she did not prevail on all of her claims; (b) her attorneys did not maintain contemporaneous billing records; ©) counsel exercised "block billing" practices; (d) she should not be awarded fees for clerical work; and (e) her case was overstaffed.  (Docket No. 93). In support of these objections, the City has submitted

---

[10]

These twelve factors are derived from the Unites States Senate House Report No. 94-1558 (1976) related to Congress' enactment of the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. *See also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

Mr. Schratz's declaration and audit report.[11] (Docket No. 93-2). In addition, at the hearing, the City set out an additional argument: (f) Brown's claim for the total hours charged by her counsel is excessive and unreasonable, when considering each task line by line given the limited discovery that took place and the small number of in-court proceedings. (Trans. at 44-47). The City requests a reduction in the fee award of $52,367.69 in accordance with the specific findings of Mr. Schratz. (Docket No. 93-2). It requests a further downward adjustment for the level of success obtained by Brown. (Docket No. 93 at 16). In response to Mr. Schratz's challenges, Brown points out that the City rejected the recommendations of the Magistrate Judge Mitchell, acting as mediator in this case, and then elected to hire an out of state auditor to critique Brown's fee request "in ways that contradict established law." (Docket No. 97 at 5). Brown further argues that because her claims all sought the same relief and because she succeeded in obtaining that relief, i.e. striking down the Ordinance, she has fully prevailed. (*Id.* at 10-15). The Court will address each of the City's objections, in turn.

## A.      Extent of Relief Obtained

The main dispute between the parties is whether Brown is entitled to the entire amount of fees sought, as Defendants argue that she did not fully prevail on all of her claims. (Docket No. 93 at 2). While Defendants concede that Brown is the prevailing party (Trans. at 49), they argue that because, out of the nine causes of action in her Amended Complaint, (Docket No. 72), she was granted relief on only one aspect of one claim, namely her First Amendment claim, she cannot recover all of her requested fees. (Docket No. 93 at 5-6). The City points out that her remaining

---

[11]

*See* note 3, *supra*.

claims were neither affected by appeal nor remanded, and they were subsequently abandoned by Brown upon her agreement with the City. (*Id.*). In support, Defendants chart out Plaintiff's causes of action and the resolution of each. (*Id.* at 8-12). Defendants also argue that because the fifteen foot buffer zone remains in place, Brown's claims of complete success are "vastly overstated." (*Id.* at 13, Trans. at 48-49). The City then requests a reduction in the fee award to subtract the time Brown's counsel spent on litigating the claims that were allegedly non-successful and/or non-resolved, as calculated by Mr. Schratz to be in the amount of <u>$2,805.00.</u> (*Id.*; Docket Nos. 93-2 at 30, 93-10).

Brown argues in response that because she achieved all of her goals and prevailed on "any significant issue," she fully prevailed. (Docket No. 97 at 6). She further argues that the City's claims-parsing contradicts controlling law, as all of her claims relied on the same facts and legal theories and one right - her freedom of expression. (*Id.* at 7-9). To this end, Brown posits that in light of the Court of Appeal's ruling invalidating the Ordinance facially, she had no need to prevail on any other claim because she obtained what she sought, i.e. the permanent injunction. (*Id.* at 9). Furthermore, she argues that had the City only enacted the fifteen foot buffer zone, there would have been no litigation. (Trans. at 21, 65). In addition, Brown points out that each of her claims remained viable on remand but she declined to pursue them after the City agreed to enjoin the bubble zone. (Docket No. 97 at 10; Trans. at 24-25, 67). If the City had chosen to keep the bubble zone, Brown asserts that she would have pursued her as-applied challenge. (*Id.*). In sum, Brown maintains that she prevailed in her "common core" case. (*Id.* at 14).

"To be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tx. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989); *SPIRG*,

51 F.3d at 1185. The prevailing party inquiry focuses on the degree of success obtained and the reasonableness of the fee request in relation thereto. *Id.* A party is considered to have prevailed if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433; *see also Witkowski v. Int'l Brotherhood of Boilermakers*, Civ. A. No. 06-874, 2010 U.S. Dist. LEXIS 34104, at * 9-10 (W.D. Pa. Apr. 7, 2010). A party need not obtain all of the relief requested or even ultimately win the case. *J.O. v. Orange Township Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002). However, an award of attorney's fees may be reduced if a party did not succeed on claims which are unrelated to the successful ones. *Hensley*, 461 U.S. at 434-35. But, a simple mechanistic reduction based solely on the ratio of successful claims is precluded by *Hensley*. *SPRIG*, 51 F.3d at 1190. Rather, a court should focus on the overall relief obtained in relation to the hours expended on the litigation. *Hensley*, 461 U.S. at 434.

As is the case here, when a party relies on several legal theories in support of her position, a court must decide whether the claims are "distinctly different claims for relief that are based on different facts and legal theories," or "involve a common core of facts or [are] based on related legal theories" (in which case the "lawsuit cannot be viewed as a series of discrete claims," and the court must "focus on the significance of the overall relief obtained by the plaintiff."). *Tenafly Eruv Ass'n v. Bor. of Tenafly*, 195 Fed. Appx. 93, 96 (3d Cir. 2006)(not precedential)(quoting *Hensley*, 461 U.S. at 434-35). As the Supreme Court has explained:

> cases involving . . . unrelated claims are unlikely to arise with great frequency. . . . Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, . . . [and] the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired

> outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. *The result is what matters.*

*Hensley*, 461 U.S. at 435 (citation omitted)(emphasis added). Hence, a plaintiff need not prevail on every claim in order to receive a full fee. *Id.*; *see also Mitchell v. City of Phila.*, Civ. A. No. 99-6306, 2010 U.S. Dist. LEXIS 32984, at *9-10) (E.D. Pa. Apr. 5, 2010). Nor does a plaintiff's failure to obtain the specific relief sought preclude prevailing party status. *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 165 (3d Cir. 2002).

The Court finds that Brown's claims are sufficiently interrelated to entitle her to a fee award without reduction for partial success. Her primary purpose throughout this case was to seek a court order invalidating the Ordinance, which she acquired and, therefore, her suit "materially altered the legal relationship" by modifying the City's "behavior in a way that directly benefits" Brown, as well as well as others affected by the Ordinance. *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992); *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986)("A plaintiff who obtains relief in a civil rights lawsuit does so not for [herself] alone, but also as a private attorney general."). Specifically, the legal relationship between Brown and the City was altered by the permanent injunction entered by this Court (Docket No. 85), which imposed requirements on the City that were not effective prior to this lawsuit.

In this Court's estimation, Plaintiff's lack of success on her remaining claims does not have any significant impact because the remaining claims were intertwined with the successful claim. *Tx. State Teachers*, 489 U.S. at 789-90. Within the same vein, the unsuccessful claims are not sufficiently distinct such that they should be segregated out. Plaintiff's Amended Complaint demonstrates that all of her causes of action were based on a "common core" of facts, and similar

legal theories. (*See* Docket No. 72). Each of her causes of action was based on one Ordinance, one civil right (freedom of expression), and incorporated the other claims. (*Id.*).

Furthermore, this case presented issues of first impression, i.e. the combination of two zones, and several complex legal questions. This is evinced by this Court's 69 page preliminary injunction opinion (Docket No. 67), and the Court of Appeals' 83-page opinion. (Docket No. 78-1); *see Doe v. Ward*, 282 F.Supp.2d 323, 338 (W.D. Pa. 2003)(court declined to reduce for partial success in a case of first impression involving constitutional issues that commanded a 39-page opinion). Indeed, at the oral argument before the Court of Appeals for Third Circuit, a Circuit Judge noted that this case could be the next important First Amendment case before the Supreme Court. (*See* Docket No. 93-1 at 2). Moreover, during that argument (*see* Docket No. 93-1; and Civ. A. No. 08-1819, Transcript from Oral Argument held 1/29/09) counsel did not argue each individual claim, but rather, the overall constitutionality of the Ordinance, on which the Court of Appeals ultimately ruled in Brown's favor. *Brown*, 586 F.3d 263. In other words, Brown ultimately prevailed on what she sought out to do - strike down the Ordinance.

The Court further finds that Brown's success with respect to the permanent injunction conferred a substantial public benefit in that she succeeded in securing First Amendment guarantees not only for herself but also for others in the City of Pittsburgh. *See NAACP v. Wilmington Med. Cntr., Inc.*, 689 F.2d 1161, 1167 (3d Cir. 1982)(courts should look to whether plaintiff achieved "some of the benefit sought" by the bringing the suit.). A party can be a prevailing party even though the relief obtained is not identical to that requested, as long as the relief is of the same general type. *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 912 (3d Cir. 1985). Simply because the relief awarded to Brown on appeal may have mooted certain other of her claims does

not affect her status as the prevailing party. *Truesdell*, 290 F.3d at 165. Brown elected not to pursue her as-applied challenges upon the City's agreement to enjoin the floating bubble zone. (Docket No. 97 at 5-6). She did not, however, concede the validity of her remaining claims. (*Id.*). Thus, in this Court's estimation, Brown sufficiently succeeded.

For these reasons, the Court finds that no adjustment to the fees requested in this case is appropriate on the basis of Defendants' partial or limited success arguments. Therefore, the City's objection requesting allocation between Brown's successful and successful claims, or limited success, is overruled.

### B.     Contemporaneous Billing Records

On behalf of the Defendants, Mr. Schratz also recommends that the fee award should be reduced because Brown's billing statement (Docket No. 90-1) does not constitute a contemporaneous record. (Docket No. 93-2 at 12-13). Mr. Schratz opines that none of the records appear to be original time records and that each of Brown's attorney's declarations only state that the billing statement is *"based upon* contemporaneous time records." (Docket No. 93-2 at 13). Thus, Mr. Schratz believes that all of the time entries were transferred from "an undisclosed location" onto the statement provided to the Court. (*Id.*).

The Supreme Court has stated that "contemporaneously recorded time sheets are the preferred practice." *Webb v. County Bd. of Educ.*, 471 U.S. 234, 238 n.6 (1985). The failure to present contemporaneous records is not a basis for denying an award in its entirety, but it may be a reason to reduce the fee award. *Fischer v. S.J.B.-P.D. Inc.*, 214 F.3d 115, 1121 (9th Cir. 2000). At the same time, there is no requirement that a district court examine contemporaneous time records in every case in which attorneys' fees are sought. *Id.*

14

Here, Brown's counsel affirmed in their declarations and at oral argument that their records were kept contemporaneously as a regular billing practice. (*See e.g.*, Docket No. 90-2 at 4, 90-3 at 4, 90-4 at 4, 90-7 at 4, 90-7 at 4, 98; Trans. at 8-11). Simply because counsel may have consolidated the records for each individual staff member into one, computer-generated billing statement does not detract from the contemporaneous nature of their record-keeping. Furthermore, the Court agrees with Brown that Mr. Schratz has failed to provide any evidence that counsel's hours were reconstructed after they were completed or that they are after-the-fact estimates. *But see Rapp v. City of Easton*, 77 Fed. Appx. 88, 90 (3d Cir. 2003)(records were not updated as the work was completed on a daily basis and therefore, hours were reduced). Accordingly, the Court finds that the billing practices and procedures employed by Brown's attorneys as evidenced by their declarations are sufficient to constitute contemporaneous record keeping and the City's objection regarding the same is overruled.

### C.    Block Billing Practices

The City further objects to many alleged instances of "block billing,"[12] in which Plaintiff's counsel pooled several activities together into one billing notation. (Docket No. 93). Mr. Schartz, using a computer-generated program to search for semicolons to determine the amount of block billing, found that 1,006 of the 1,185 separate billing entries contained no semicolons, while 107 entries contained 1; 37 entries had 2; 23 entries had 3; 6 entries had 4; 3 entries had 5; 2 entries had 6; and, 1 entry had 7, showing that over 40% of the billing entries were block-billed. (Docket No. 93-2 at 23-24). He then opines that the block entries effectively obscure the allocation of time and

---

[12]

"Block billing is a time-keeping method by which each lawyer and legal assistant enters the total time daily spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007).

effort among the individual tasks comprised therein. (*Id.*). As an example, Mr. Schratz points to 16 billing entries made by Mr. Cortman and Mr. Bolinger, totaling 95 hours and $30,537.50 in fees. (*Id.* at 15-18). Mr. Schartz recommends an overall 10% reduction in the total fees, in the amount of $22,797.95, to be taken after all of the other deductions he recommended. (*Id.* at 24-25, 31).

The billing practice employed here will be upheld as reasonable, if the listed activities reasonably correspond to the number of hours billed. *See Washington*, 89 F.3d at 1037-38 (holding that "computer-generated summaries of time spent by each attorney and paralegal," if they provide the date the activity took place, are sufficiently specific); and *United States ex rel. Doe v. Penna. Blue Shield*, 54 F.Supp.2d 410, 415 (M.D. Pa. 1999). In *Rode v. Dellarciprete*, 892 F.2d 1177 (3d. Cir. 1990), the Court of Appeals addressed the proper degree of specificity required of a party seeking attorneys' fees, and stated that specificity should only be required to the extent necessary for the court "to determine if the hours claimed are unreasonable for the work performed." *Id.* at 1190. "It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.* (citing *Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976)(en banc)). Time sheets which note the date of activity, the attorney who performed the activity, a general description of the same, the hours worked, the hourly rate and the total fee for the activity have been deemed adequate. *See Carter-Herman v. City of Phila.*, Civ. A. No. 95-4030, 1997 U.S. Dist. LEXIS 1130, at *4 (E.D. Pa. Jan. 31, 1997). Furthermore, the use of semicolons in billing entries is not prohibited. *See Rode*, 892 F.2d at 1191. The more appropriate approach may be to look at the entire block entry, compare the listed activities with the time spent, and determine the reasonableness

of the hours in correlation to the activities performed. *Doe*, 54 F.Supp.2d at 415. That is what this Court has done in considering this objection.

The Court first notes that all but one of the16 objected to entries already reflect a reduction in time taken by Brown's counsel. (*See* Docket No. 90-1). Mr. Schratz does not mention nor address these reductions. Second, only one of these entries by Mr. Cortman (for 12.30 hours, reduced from 16.40) exceeds 10 hours, while most others are in the 3 - 6 hour range. (Docket No. 93-2 at 15-18).

While the Court does not expect minute-by-minute entries, the Court finds that despite the use of semicolons, Brown's entries offer detailed information. As noted, the only objected to entry that exceeds 10 hours is the 12/14/05 entry for Mr. Cortman that lists traveling, reading cases, meeting and interview with client and local counsel, and a view of the clinics and surroundings as his tasks that day. (*See* Docket No. 90-6 at 5). However, this time entry exceeds 10 hours in large measure due to Mr. Cortman's travel time.[13] Given this Court's background and experience,[14] its review of Brown's attorney billing entries establishes that they are sufficiently specific to determine

---

[13]

This Court has previously disallowed compensation for travel time under *Hensley*. *See Mangino v. Pa. Tpk. Comm'n*, Civ. A. No. 07-370, 2009 U.S. Dist. LEXIS 118953 (W.D. Pa. Dec. 22, 2009). In that case, plaintiff's counsel had not demonstrated that he was doing legal work while traveling in order to attend a hearing before the Court at a late stage of the litigation. *Id.* Additionally, the Court found that the *Mangino* case did not warrant travel by counsel from outside this forum, i.e. over 240 miles away, given the issues involved and the settled controlling law. *Id.* Here, the City has not raised a specific challenge to Brown's claim for travel time although it has raised excessiveness of fees as a defense to payment of the requested attorneys' fees and costs. However, the Court finds that Brown's counsel, namely Mr. Cortman, has demonstrated that he performed legal work while traveling on each of the five occasions he came to Pittsburgh. (*See* Docket No. 90-1 at 56, 59, 62, 65-66, 75). In addition, each of these entries have been reduced by at least 30%. (*Id.*). The Court also finds that it was reasonable for Brown to seek counsel through the Alliance Defense Fund, given its expertise in First Amendment law and the complex legal questions raised by this case. *See Hahneman Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 311 (3d Cir. 2008). Therefore, the Court will not reduce Brown's fee award for time billed by her counsel to travel to Pittsburgh.

[14]

Prior to coming on to the bench, I spent thirty years in private litigation practice including insurance defense, part of which included civil rights and employment cases. Given that and my management roles at two Pittsburgh medium-sized law firms, I am very familiar with client billing guidelines, preparation of prebills and final bills for litigation matters, as well as legal auditors akin to Mr. Schratz.

whether the hours are reasonable. *See also King v. Turner*, Civ. A. No. 05-388, 2007 U.S. Dist. LEXIS 30214, at *6-7 (D. Minn. 2007)(overruling Mr. Schratz's objection based block billing after finding that billing entries were sufficiently specific ); *Branham*, 2006 WL 1750443, at *6 (rejecting Mr. Schratz's) challenge based on block billing). For these reasons, the Court does not agree that an additional overall reduction of 10 % is warranted. Therefore, the Court overrules the City's objection on these grounds and will not reduce the fee award based on block billing.

### D.    Clerical Work

The City next objects to fees for work performed by attorneys or paralegals which it believes could have been performed by a clerk or secretary. (Docket No. 93, 93-2 at 20, 25). Mr. Schratz compiled a list of such tasks in entries that he considered to fall within the category of tasks that are "clerical" in nature. (Docket No. 93-2 at 25-26). Each of these entries catalogued work which was performed by one attorney, Ms. Murray, and various paralegals. (*Id.*). In compiling this list, Mr. Schratz frequently extracted certain clerical tasks from entries that contained more than one listed task. Specifically, he objects to 12 time entries totaling 9.30 hours, as provided in the City's Exhibit 6 to its Response. (Docket No. 93-8). Thus, the City requests a reduction of $1,213.50 for clerical work. (*Id.*).

In response, Brown argues that two challenged time entries by Ms. Murray did not exclusively entail administrative duties, and that editing and proofreading a brief is essential for filing. (Docket No. 97 at 16). At the motion hearing, Brown added that certain of the tasks performed by Ms. Murray required legal judgment and that an attorney's time should not be discounted for proofing his or her work. (Trans. at 28-30, 32). Furthermore, Brown points out that Mr. Schratz failed to account for the reductions in time already imposed by her counsel. (*Id.*). The other entries

from legal assistants and paralegals are quintessential to those employees' duties; hence, Brown contends that the City's objection should be overruled. (*Id.*). However, Brown's counsel overlooks legal authority permitting this Court discretion to disallow fees for such tasks. The Court now turns to that authority.

Work performed by non-bar members may be considered billable when the work product of an attorney relies on those services provided by clerks and paralegals. *See Missouri v. Jenkins*, 491 U.S. 274, 286 (1989). Reasonable attorney's fees do not compensate only work performed personally by members of the bar. *See id.* at 286 (holding that clerk and paralegal services should be billed at market rates rather than at a rate corresponding to their salaries, benefits and overhead). However, a court may award fees at a reduced rate for time spent performing clerical tasks such as faxing, emailing, filing, scanning, assembling, and conforming. *McKenna*, 582 F.3d at 456-57; and *Loughner v. Univ. of Pitt.*, 260 F.3d 173, 180 (3d. Cir. 2001). And, a court may disallow reimbursement for proofreading, technical changes, and copying, binding and filing a brief. *See Walton v. Massanari*, 177 F.Supp.2d 359, 365 (E.D. Pa. 2001). As to paralegal time devoted to clerical tasks, such time is generally not reimbursable. *See Missouri*, 491 U.S. at 288 n.10. ("purely clerical or secretarial tasks should not be billed at the paralegal rate, regardless of who performs them.").

Ms. Murray's billing entries on 3/24/06 and 6/26/06, totaling 3.0 hours at $225/hour ($675.00 in fees), include editing and proofreading the complaint and preliminary injunction brief, scanning, and preparing those documents for filing. (Docket No. 90-1 at 17, 30). Mr. Schratz does not take into account that these two entries were reduced from 4.90 hours to 3.0 hours. Moreover, the Court finds that Ms. Murray properly billed for proofreading and editing her attorney work product. *See Missouri*

*v. Jenkins*, 491 U.S. at 386. Therefore, the Court will not reduce Brown's fee award for Ms. Murray's time on 3/24/06 and 6/26/2006, i.e. $675.00 in fees.

As to the remaining 10 entries objected to by the City, the hours charged in those entries are solely by paralegals and non-attorney staff members. (*See* Docket No. 93-8; Docket No. 90-1). All of these entries consist of filing tasks, service tasks, editing, formatting, and the like. (*Id.*). This Court's research did not reveal a bright line rule as to whether fees may be awarded in a civil rights case for such tasks, nor has either side cited authority directly on point. Although the Court recognizes that a few of these entries were already reduced by Brown's counsel (*see* Docket No. 93-2 at 26, Docket No. 90-1), given the amount of non-attorney staff involved in Brown's case, the Court finds that a partial reduction for clerical work is warranted.

As a result, the City's objection based on clerical work is overruled, in part, and sustained, in part. Brown's fee award will be reduced by $538.50 based on Defendants' objection to clerical tasks.

###    E.    Overstaffing

The City submits that Brown's case was overstaffed with multiple representation in Court hearings and routine status conferences. (Docket No. 93-2 at 26-27). It argues that more than one attorney to attend hearings was excessive and unnecessary, and should be disallowed. (*Id.*). Mr. Schratz challenges four time entries made by Mr. Paladin and Mr. Bolinger on 5/16/07, 11/27/07, 11/27/07, and 12/14/09, and requests they be excluded in the sum of $2,277.50. (*Id.*; *see also* Docket No. 93-9).

The Court of Appeals for the Third Circuit has written that "in many cases, the attendance of additional counsel representing the same interests as the lawyers actually conducting" the

litigation is "wasteful and should not be included in a request for counsel fees." *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 943 (3d Cir. 1995). Thus, compensation may be disallowed for more than one lawyer performing either trial or office work. *See, e.g., Lanni v. New Jersey*, 259 F.3d 146 (3d Cir. 2001). However, if a case presents multiple, complex legal questions and/or an issue of first impression, an award may be given to account for the "magnitude of the case." *Planned Parenthood v. A.G.*, 297 F.3d 253, 272 (2002). Moreover, the fact that two attorneys provided legal service does not render all common entries impermissibly redundant or duplicative. *Steward v. Sears, Roeback & Co.*, Civ. A. No. 02-8921, 2008 U.S. Dist. LEXIS 34971, at *13-14 (E.D.Pa. Apr. 29, 2008)(citation omitted).

Here, given the magnitude and complexity of this case,[15] in which even the City Defendants found it necessary to staff their case with two attorneys from the onset, it was reasonable for Brown to have the assistance of two attorneys at status conferences and proceedings. Moreover, it is certainly not uncommon to have two attorneys representing one party in a case such as this. Within the same vein, this case presented not only complex legal questions, it presented an issue of first impression, yet to be addressed by the United States Supreme Court. Quite simply, the breadth of this case commanded the help of numerous attorneys for both parties. Further, Brown's counsel exercised billing judgment and reduced the hours of several attorneys whose roles were to draft pleadings, motions, and briefs prior to submission of her fee request to the City. And, as local counsel, Mr. Paladin aided Brown's cause with his familiarity with the facts, the venue, and this

---

[15]

On this point, the Court of Appeals for the Third Circuit noted in its opinion that the "question [between the two zones] was close." *Brown*, 586 F.3d at 282, 288.

Court's practices and procedures. The Court also notes it repeatedly sees local counsel appear with lead trial counsel in a wide variety of cases.

However, only on one of the four contested entries, the 11/27/07 status conference before the Court, were there three attorneys present - Mr. Cortman, Mr. Bolinger,[16] and Mr. Paladin. (Docket No. 90-1 at 62). Brown agues that Mr. Bolinger's attendance at this conference was necessary because he was "very familiar" with the record, assisted in preparing briefs, and "would be responsible for preparing for the upcoming" hearing, i.e. the 12/19/2007 hearing. (Docket No. 97 at 18). However, as Mr. Cortman is lead counsel, he would have been as familiar with the facts as Mr. Bolinger, and it was Mr. Cortman who ultimately prepared for and attended the December hearing.[17] (Docket No. 90-1 at 63-66). As a result, the Court will reduce its award based on the Defendants' overstaffing argument for this time entry, only. Mr. Bolinger's charge totaling $1,552.50, will be subtracted from Brown's overall fee award.

### F.     Excessive Billing for Time Spent on Particular Tasks

As a final challenge, the City contends that Brown's counsel generally billed excessive hours for drafting and preparing for hearings. (Trans. at 44). In particular, the City objected to the number of hours charged for counsel's  preparation for the evidentiary hearing on September 21, 2006 (Docket No. 44), and noted in comparison that their preparation for the argument on December 19,

---

[16]

Mr. Cortman and Mr. Bolinger, who replaced Ms. Murray, "spearheaded this case" for ADF counsel. (Docket No. 91 at 14).

[17]

Mr. Cortman's time entries listing his preparation for the December hearing begin on 12/4/2007 and end on 12/17/2007. (Docket No. 90-1 at 63-66). Said entries include reviewing all of the pleadings, exhibits, testimony, case law, and drafting argument notes. (*Id.*). Mr. Bolinger's entries for the same period reflect that he primarily spent that time working on Brown's initial disclosures and her notice of supplemental authority. (*Id.* at 62-65). The Court also notes that its chambers' and courtroom technology are equipped to provide telephone conferencing; thus, Mr. Bolinger could have appeared for the 11/27/07 conference by telephone. No such request was sought.

2007 was significantly less. (Trans. at 46-47; Docket No. 66). Generally, the City argues that the time spent on this case by Brown's counsel was unreasonable and excessive.[18] (*See* Docket No. 93 at 16, Trans. at 45).

In accordance with *Hensley*, this Court has the discretion to make a downward adjustment for duplicative and excessive hours expended by counsel. *Hensley*, 461 U.S. at 4433. To this end, a "court must be careful to exclude from counsel's fee request 'hours that are excessive, redundant, or otherwise unnecessary.'" *Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 595 (3d Cir. 2000)(quoting *Hensley*, 461 U.S. at 434). To be appropriately awarded, attorney's fees must be "useful and of the type ordinarily necessary to secure the final result obtained from the litigation." *Planned Parenthood*, 297 F.3d 253 (quotation omitted). "A district court should not decrease a fee award based on factors not raised at all by the adverse party." *McKenna*, 582 F.3d at 459 (quoting *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)). Where an opposing party lodges an objection to an aspect of a fee award, it is necessary that the court "go line, by line, by line through the billing records supporting the fee request." *SPRIG*, 426 F.3d at 713.

Aside from its challenges to counsel's preparation for the evidentiary hearing, the City has not raised any other specific objection to a particular task but generally challenges counsel's time for drafting as excessive; therefore, the Court conducted an independent review of counsel's time entries pursuant to its obligation under *Hensley* to assess the reasonableness of Brown's attorney hours. Given Defendants' general challenges, the Court has derived the number of hours spent on

---

[18]

The City has not raised an objection to any specific entry related to excessive billing for drafting; rather, it argues that given that counsel is "well-schooled in constitutional law," the number of hours claimed is unreasonable. (Docket No. 93 at 16).

the below outlined tasks from Brown's billing statements (Docket Nos. 90-1, 97-1) and makes the following findings.

### a. Preparation for the 9/21/2006 Preliminary Injunction Hearing

Turning to the City's specific excessiveness objection to counsel's time charged in preparing for the preliminary injunction evidentiary hearing, the Court's review of Brown's billing statements indicates a total amount of time taxed for same to be 162.2 hours, amounting to $50,352.50 in fees. (Docket No. 90-1). To break it down by attorney, Mr. Cortman charged $46,340 for 132.40 hours, Ms. Murray charged $855 for 3.8 hours, Mr. Paladin charged $1,725 for 6.90 hours, and various paralegals charged $1,432.50 for 19.10 hours (*Id.*). The Court finds Mr. Cortman's hours to prepare to be excessive.

"A reasonable fee for hours spent preparing for a legal argument should be limited to hours reasonably necessary for a lawyer to become familiarized with the facts and the law pertaining to the issue to be argued, an analysis of the opponent's argument, and questions anticipated to be posed by the court." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). Notwithstanding the fact that the preliminary injunction motion was a very significant part of this case, the hearing before then District Judge Thomas M. Hardiman[19] only took about 2 and ½ hours. (Docket No. 44). This Court's review of Mr. Cortman's time entries demonstrates that he spent most of his time preparing for the hearing by reading cases, drafting notes and questions, and outlining his argument for the hearing. (Docket No. 90-1). Based on Mr. Cortman's skill and experience with this case and numerous other

_____

[19] Judge Hardiman was elevated to the United States Court of Appeals for the Third Circuit in the spring of 2007.

similar matters,[20] the Court finds that 132.40 hours to prepare for the preliminary injunction hearing is not warranted. *See Maldonado*, 256 F.3d at 186 (a court should exclude hours that would be unreasonable to bill to a client, irrespective of counsel's experience, skill or reputation); *see also Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292 (11th Cir. 1988)(same).

Accordingly, the Court reduces Mr. Cortman's fees in preparing for the preliminary injunction hearing by 50 %, thereby adjusting downward Brown's overall fee request by <u>$23,170.</u> *See Garden State Auto Park Pontiac GMC Truck, Inc. v. Electronic Data Sys. Corp.*, 31 F.Supp.2d 378, 387 (D. N.J. 1998)(reducing fees by half for excessiveness).

### b.    Brown's Reply in Support of the Preliminary Injunction Motion

A review of Brown's billing sheets (Docket No. 90-1) reveals that Brown's attorneys and their staff billed a total of 101.60 hours ($24,500 in fees) for the preparation of her Reply brief, which ultimately resulted in 16 pages of argument in support of her preliminary injunction motion. (Docket No. 40). The largest amounts of time were spent by Mr. Cortman (14 hours at $350/hour = $4,900) and Ms. Murray (85 hours at $225/hour = $19,125, totaling $24,025). (Docket No. 90-1). In comparison, her counsel only billed 80 hours for their research and drafting of her initial brief in support of the motion, which consists of 30 pages of argument. (Docket No. 23). In addition, the Reply contains duplicative case law and related discussion. *Mangino v. Pa. Tpk. Comm'n.*, Civ. A. No. 07-370, 2009 U.S. Dist. LEXIS 118953, at *12-13 (W.D. Pa. Dec. 22, 2009); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *In re Cendant Corp. Sec. Litig.*, 404

---

[20]

Mr. Cortman has been practicing in the areas of religious freedom, freedom of expression and civil rights litigation for the past thirteen years. (Docket No. 90-2). He is Senior Legal Counsel for the Alliance Defense Fund. (*Id.*). In his practice, he has served as lead or co-counsel in well over one hundred First Amendment Cases. (*Id.* at 2-3).

F.3d at 191 (3d Cir. 2005)(duplicative work will not normally be compensated). A "fee applicant cannot demand a high hourly rate -- which is based on his or her experience, reputation, and presumed familiarity with the applicable law -- and then run up an inordinate amount of time researching that same law." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983). Despite the fact that Brown's briefs were consistently well written, in light of her counsel's skill and prior experience, *Hensley*, 461 U.S. at 430 n.3, the Court finds the hours claimed for this reply brief to be excessive. The Court thus reduces the fees requested for same, again adjusting downward the overall request by $12,250 (50% of $24,500). *See Luessenhop v. Clinton County*, 558 F.Supp.2d 247, 271 (N.D.N.Y. 2008)(court reduced fee application by half because of rehashed case law and arguments).

### c. Brown's Reply & Declarations in Support of her Attorney's Fee Motion

For similar reasons discussed above, the Court finds that Brown's counsel hours spent in preparing her Reply brief in support of her fee request (Docket No. 97) and the declarations attached thereto (Docket No. 97-3 - 97-12) are excessive. To prepare this reply, which resulted in 14 pages of argument, Brown's attorneys posted 40 hours, amounting to $8,625 in fees. (Docket No. 97-17). As to the supporting declarations, her counsel billed 8.60 hours, totaling $4,367.50 in fees. (*Id.*). In sum, counsel charged $12,992.50 to prepare the reply brief and declarations. (*Id.*). In light of the issues presented and the nature of the City's exhibits, the Court finds that the time spent on preparing this Reply is likewise excessive. Therefore, the Court further reduces Brown's potential award by $6,496.25 (50 % of $12,992.50).

### d. Becoming Familiar with Local Practices & Rules

Brown's counsel and staff billed time on a number occasions for researching and reviewing this Court's local rules, practices and filing procedures. For these activities, they posted $2,767.70

in fees. (Docket No. 90-1 at 18, 20, 24, 33, 34, 37, 42, 44, 51, 52, 60-61, 64, 67-68, 72). In this Court's estimation, Brown's counsel should not be awarded for time spent in reading this Court's local rules and practices, given that they declared to the Court in their pro hac vice motions that they had become familiar with the Local Rules and the ECF system. (*See, e.g.*, Docket No. 33-2, Jeremy Tedesco, Esq.'s Declaration attached to his motion to appear pro hac vice); *see also Planned Parenthood*, 296 F.2d at 271 ("the losing party should not be expected to pay for the time a prevailing party spends coming up to speed on an area of law it is unfamiliar with."). Furthermore, the Court assumes that Brown's ADF counsel hired local counsel, Mr. Paladin, for the purpose of having co-counsel who was intimately familiar with the rules, policies, and practices of this Court. In their numerous attorney conferences (*see* Docket No. 90-1 at 2-15), if Brown's counsel had questions about this Court's practices and procedures, he or she should have discussed the same with Mr. Paladin. Given the Court's duty to analyze the reasonableness of a fee request, *Hensley*, 461 U.S. at 429-30, the Court will not award fees in the amount of $2,767.70 for counsel's time spent reviewing the local rules and filing procedures of this Court.

### e.  Motions to Withdraw and Pro Hac Vice

Additionally, the Court will not award fees for time spent on Ms. Murray's withdrawal motion.  In *Employers Ins. Co. of Wausau v. Harleysville Inc. Co.*, Civ. A. No. 05-4900, 2008 U.S. Dist. LEXIS 95003, at *6-7 (D.N.J. Nov. 20, 2008), while the court did not completely disallow time billed for filing pro hac vice motions, it reduced the time to half.  It reasoned that because these types of motions did not involve the filing of a legal brief or legal research, and are generally standard form motions, 4.1 hours for one motion was excessive.  *Harleysville*, 2008 U.S. Dist. LEXIS 95003, at *6-7 (reducing to 2.0 hours). The court further noted that such motions are normally saved on a

firm's computers and updated as necessary. *Id.* Here, while it does not appear that Plaintiff's counsel charged for their *pro hac vice* motions, Ms. Murray billed $120 for preparing and filing her motion to withdraw. (Docket No. 90-1 at 45, 48, 49, 56). The Court finds the reasoning of *Harleysville* regarding *pro hac vice* motions persuasive, that is, counsel should not be reimbursed for the time spent in filing an appearance or withdrawing an appearance; therefore, it will not award fees in the amount of $120 for Ms. Murray's efforts in withdrawing, as her time spent on the same had no bearing on Brown's case.

### f.     Preparation of a Document Never Filed

The Court further finds that the City should not be required to reimburse Brown's counsel for their preparation of a motion that was never filed, and thus, did not add value to Brown's case.[21] In particular, counsel's time in preparing a petition for writ of mandamus (*see* Docket No. 90-1 at 69) does not appear to have been used for another purpose or subsumed within another filing. And, in this Court's opinion, the research and drafting of the same was not "necessary" and "useful" to the legal questions in this case. *See Planned Parenthood v. AG*, 297 F.3d 253, 271 (3d Cir. 2002). Therefore, the Court will not reimburse Brown's counsel in the amount of $1,377.60 sought in relation to the petition for writ of mandamus. (Docket No. 90-1 at 69).

### G.     Costs

The City and Mr. Schratz lastly lodged an objection to Plaintiff's reimbursable non-taxable costs on the grounds that Brown did not provide sufficient back-up documentation for the same.

---

[21]

In *Planned Parenthood v. AG*, 297 F.3d 253, 271 (3d Cir. 2002), the district court's decision to award fees for a summary judgment brief that was never filed was upheld for distinguishable reasons. There, the brief was eventually submitted in lieu of pre-trial and post-trial briefs, and so the court deemed the work certainly "necessary" and "useful." *Id.*

(Docket No. 93-2 at 31). Defendants requested that pending receipt of further documentation, Brown's request for costs be denied. (*Id.*). With her Reply, Brown provided a detailed, itemized explanation of costs from December 14, 2005 through January 6, 2010. (Docket No. 97-17). She noted that after further review of the receipts, her counsel identified an error of $458.64, bringing the total amount of costs sought to $8,991.24. (*Id.*). Subsequently, at the motion hearing, the City did not raise any further challenge to Brown's request for an award of costs. (Trans. at 51).

It is well established that the costs of litigation may be recovered as part of the "reasonable attorney's fee" under section 1988. *See Abrams v. Lightolier*, 50 F.3d 1204, 1225-26 (3d Cir. 1995). As noted, the City was given the opportunity to file a sur-reply to Brown's itemized list of expenses. (Docket No. 97-17 at 5); however, it declined to do so. (*See* Docket Nos. 96, 98). Furthermore, upon a line-by-line review of Brown's listing of costs, the Court finds that her costs in the amount of $8,991.24 are reasonable. Accordingly, to the extent that the City continues to object to same, said objection is overruled.

## H. Delay in Payment

Brown argues that the City rebuffed "all attempts to resolve this case by allowing" her to continue her First Amendment activities. (Docket No. 91 at 8; Trans. at 56-57). She further contends that even after the Court of Appeals filed its opinion, the City continued to prolong this litigation by rejecting the terms of this Court's permanent injunction, and the recommendations of the mediator, Magistrate Judge Mitchell. (*Id.*). Thus, Brown impliedly argues that the mediation, which took place on January 6, 2010 (Docket No. 88) was unsuccessful because of the City's failure to act in good faith throughout the settlement process. (*See also* Trans. at 26-27). Therefore, the Court will address authority providing for an adjustment in the lodestar for delay in payment.

In *Missouri*, *supra*, the Supreme Court equated an adjustment in the lodestar allowed for the delay in payment in civil rights cases with an award of prejudgment interest on an attorney's fee award. *Missouri*, 492 U.S. at 282 n.3. This "delay-in-payment adjustment" "is designed to compensate the attorney for the time gap between the actual expenditure of services and the fee award," while post-judgment interest covers the delay in receipt during the period from the fee determination to payment. *Eaves v. County of Cape May*, 239 F.3d 527 (3d Cir. 2001)(citing *Black v. Grievance Comm. v. Philadelphia Elec. Co.*, 802 F.2d 648, 656 (3d Cir. 1986), *vacated and remanded on other grounds*, 483 U.S. 1015 (1987)). The party requesting an adjustment in a fee award for delay in payment bears the burden of demonstrating the need for such an award, and may satisfy the same with adequate evidentiary support documenting costs incurred due to the delay in the receipt of funds. *Blum v. Witco Chem. Corp.*, 888 F.2d 975, 985 (3d Cir. 1989); *SPIRG*, 842 F.2d at 1453.

The Court of Appeals for the Third Circuit has explained that in granting compensation for delay, two methods may be used: (1) basing the fee award on current market rates; or, (2) adjusting the fee based on historical rates to reflect its present value. *Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir. 1991). The rationale for using current rates is that "using current market rates to calculate the lodestar figure may counterbalance the delay in payment as well as simplify the tasks of the district court." *Blum*, 888 F.2d at 984.

Here, although the City allegedly rejected a reasonable recommendation from Judge Mitchell to settle this case on January 6, 2010,[22] Brown has not provided the Court with evidentiary support

_____

[22]

Section 6 of the ADR Policies and Procedures for the Western District of Pennsylvania provides, as a general rule, that the contents of all documents and communications during the ADR process are confidential. *See*

for an award of prejudgment interest for the City's delay in payment of attorney's fees. Notwithstanding the same, Brown has requested and the Court has ruled, given the City's lack of objection, that her counsel will be compensated using current prevailing market rates. (*See, e.g.*, Docket Nos. 90-2 at 4, 90-3 at 3). Thus, any costs incurred by Brown for delay in payment of attorney's fees are obviated by this Court's use of current market rates to calculate the lodestar figure. *Blum*, 888 F.2d at 984. In addition, the Court acknowledges that post-judgment interest on the award of fees in this case will run from the date the Court quantifies the award. *See Nationalist Movement v. City of York*. 340 Fed. Appx. 91, 94 (3d Cir. 2009)(not-precedential)(citing *Eaves*, 239 F.3d at 527-28); *Witkowski*, 2009 U.S. Dist. LEXIS 109663, at *2-3.

## V.    Conclusion

For the reasons discussed above, the Court grants Brown's Motion for Attorney's Fees and Non-taxable Costs (Docket No. 90) and Supplement (Docket No. 97), but with relief different than that requested. Specifically, the Court makes the following reductions to Brown's total fee request of $248,558.00:

| | |
|---|---|
| Clerical | 538.50 |
| Overstaffing | 1,552.50 |
| Time for 9/21/06 Hearing | 23,170.00 |
| Reply Brief (Docket No. 40) | 12,250.00 |
| Reply in Support of Fees (Docket No. 97) | 6,496.25 |
| Review of Local Rules & Procedures | 2,767.70 |
| Ms. Murray's Motion to Withdraw | 120.00 |
| Petition for Writ of a Mandamus (not filed) | 1,377.60 |

---

http://www.pawd.uscourts.gov/Applications/pawd_adr/Documents/ADR_Policy_and_Procedures.pdf. (last visted May 26, 2010). In addition, the Pennsylvania mediation statute, 42 Pa.C.S. § 5949, states that all mediation communications and related documents are privileged and may not be disclosed or compelled through discovery. *See also Sampson v. Sch. Dist.*, 262 F.R.D. 469, 475 (E.D. Pa. 2008)(mediation privilege shelters the mental processes of the attorney.).

**Total Reductions:**                                    $  48,272.55

**Total Award of Fees**                              **$ 200,285.45**
($ 248,558.00 - 48,272.55)

The Court has found Brown's costs to be reasonable and as such has not reduced them.

Costs                                            $ 8,991.24

**<u>Total Award:</u>**                                  **<u>$ 209,276.69</u>**


An appropriate Order follows.

                                        *<u>s/ Nora Barry Fischer</u>*
                                        Nora Barry Fischer
                                        United States District Judge

Dates:        May 27, 2010.
cc/ecf:        All counsel of record.